**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ARNOLD SEGAL, et al.,**

**Plaintiffs,**

**v.** **Case No. 8:04-cv-2388-T-30MAP**

**NATIONAL ACTION FINANCIAL SERVICES, INC.,**

**Defendant.**
**_________________________________________/**

## ORDER

THIS CAUSE comes before the Court upon Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability (Dkt. #17), Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment (Dkt. #23), Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment (Dkt. #28), Defendant's Motion for Summary Judgment (Dkt. #31), Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Dkt. #32), and Plaintiffs' Response and Memorandum of Law. The Court, having considered the motions and memoranda, and being otherwise advised in the premises, finds that Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability (Dkt. #17) should be denied, and Defendant's Motion for Summary Judgment (Dkt. #31) should be granted in part and denied in part as stated herein.

## I. Background

Plaintiffs, Arnold Segal and Karen Segal[1] ("Plaintiffs") allege that Defendant, National Action Financial Services, Inc. ("Defendant") violated the Florida Consumer Collection Practices Act and the Federal Fair Debt Collection Practices Act as follows: a) by phoning Plaintiffs' residence roughly twice a week over the past year and a half, despite being informed that Karen Segel was sick and would be unable to settle her account for the foreseeable future in violation of Fla. Stat. §559.72(7) and 15 U.S.C. §1692d(5); b) by telling Arnold Segel that he had a legal obligation to settle Karen Segel's account in violation of Fla. Stat. §559.72(9) and 15 U.S.C. §1692e(2)(A); and c) by sending a "dunning letter" to the residence of a third party in violation of 15 U.S.C. §1692c(b). Count I is brought by Plaintiff, Arnold Segel, against Defendant for violations of the Florida Consumer Collection Practices Act under §559.72(7) and §559.72(9). Count II is brought by Plaintiff, Arnold Segel, against Defendant for violations of the Federal Fair Debt Collection Practices Act under §1692c(b), §1692d(5), and §1692e(2). Count III is brought by Plaintiff, Karen Segel, against Defendant for violations of the Florida Consumer Collection Practices Act under §559.72(7) and §559.72(9). Count IV is brought by Plaintiff, Karen Segel, against Defendant for violations of the Federal Fair Debt Collection Practices Act under §1692c(b), §1692d(5), and §1692e(2).

---

[1] It appears that there is a scrivener's error in the style of the case. Plaintiffs' legal names are "Karen Segel" and "Arnold Segel." For purposes of this Order, Plaintiffs will be referred to as "Karen Segel" and "Arnold Segel."

Plaintiffs now seek partial summary judgment on the issue of Defendant's liability under the Florida Consumer Collection Practices Act and the Federal Fair Debt Collection Practices Act. Plaintiffs assert that partial summary judgment is appropriate based upon Plaintiffs' deposition testimony (Dkts. #25 and 26), affidavits in support of Plaintiffs' motion for partial summary judgment (See Dkt. #23) and discovery requests and responses filed in support of Plaintiffs' motion for partial summary judgment (See Dkt. #27).

Concurrently, Defendant seeks summary judgment in its favor as to all counts. Defendant asserts that summary judgement is proper as to all counts, because the pleadings, depositions, answers to interrogatories, and admissions on file with the Court demonstrate that there is no genuine issue as to any material fact to be tried on the issue of liability against Defendant.

## II. Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine

the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## III. Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability

Plaintiffs allege that Defendant violated the Florida Consumer Collection Practices Act and the Federal Fair Debt Collection Practices Act as follows: a) by phoning Plaintiffs' residence roughly twice a week over the past year and a half, despite being informed that

Karen Segel was sick and would be unable to settle her account for the foreseeable future; b) by telling Arnold Segel that he had a legal obligation to settle Karen Segel's account; and c) by sending a "dunning letter" to the residence of Karen Segel's step-son.

**A. Harassing Phone Calls**

Plaintiffs allege that Defendant violated §559.72(7) of the Florida Consumer Collection Practices Act and §1692d(5) the Federal Fair Debt Collection Practices Act by phoning Plaintiffs' residence roughly twice a week over the past year and a half, despite being informed that Karen Segel was sick and would be unable to settle her account for the foreseeable future.

**1. Karen Segel's claims pursuant to §559.72(7) and §1692d(5)**

The Court finds that the resolution of Karen Segel's claims will depend on whether the evidence presented at trial establishes that Defendant violated: Fla. Stat. §559.72(7) , by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct (such as mailing a letter to her at her son-in-law's residence) which can reasonably be expected to abuse or harass the debtor or any member of her or his family; or 15 U.S.C. §1692d, by engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, including but not limited to causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. Neither Plaintiffs nor Defendant have submitted phone records or other

evidence that would illustrate the number of calls or frequency of calls by the Defendant to the Plaintiffs. Further, the allegations in the Complaint (Dkt. #1) conflict with the deposition testimony and affidavit of Karen Segel offered in support of Plaintiffs' motion.[2] There appears to be a genuine issue of fact as to the number and frequency of phone calls made by Defendant and received by Karen Segel. Additionally, there appears to be a genuine issue of fact as to whether such phone calls were made with such frequency as to reasonably be expected to harass Karen Segel.

**2. Arnold Segel's claims pursuant to §559.72(7) and §1692d(5)**

The Court finds that the deposition testimony of Arnold Segel and the affidavit of Arnold Segel do not support the allegations made in the Complaint on behalf of Arnold Segel. In Count I of the Complaint, Arnold Segel alleges, in pertinent part:

> 8. Defendant National Action Financial Services, Inc. has made many telephone calls to Plaintiff Arnold Segel and Plaintiff Karen Segel's home. Plaintiff Arnold Segel estimates that these phone calls are made as often as twice a week and have continued throughout the past year and a half.
> 9. When Defendant National Action Financial Services, Inc. has called, it has repeatedly engaged Plaintiff Arnold Segel in conversation regarding Karen Segel's debt....
>
> * * *
>
> 11. In the course of each phone conversation referenced in paragraph 9, the representative of National Action Financial Services, Inc. told Plaintiff Arnold

---

[2] See Dkt. #1-1, Complaint, Paragraph 8 (phone calls are made as often as twice a week); Dkt. # 26, Karen Segel's Deposition, p.25 (calling at least three times a week...some weeks I would say at least five days out of the week, sometimes they'd call once every day); and Dkt. #23, Karen Segel's Affidavit (calling Karen Segel at least three times a day). It appears that Karen Segel's allegations of harassment grow in strength as the parties move towards trial.

Segel that he had a moral and legal obligation to settle the balance on Karen Segel's account.

Contrary to Arnold Segel's allegations in the Complaint, Arnold Segel has made the following material statements in his affidavit (Dkt. #23) filed in support of Plaintiffs' motion for partial summary judgment:

> Arnold Segel would get phone calls at home about a debt allegedly owed by his wife. The caller would ask if Karen Segel was home. If she was not available the caller would ask if he was the husband. When he said yes they would tell him he owed the money and needed to pay it. Arnold Segel would tell them he did not owe the money and he wasn't going to pay it under any circumstances. The collectors would then get hostile and start yelling at him and calling him a liar. When they were through yelling he would tell them "have a good day" and "God bless you" and hang up. *Arnold Segel said he didn't know if the calls were from NAFS, the CIA, or the IRS,* but they were calling about his wife's debt and were telling him he owed it and demanded he pay it. (Emphasis added.)

Additionally, Arnold Segel's allegations in the Complaint are directly contradicted by his deposition testimony as follows, in pertinent part:

Q: Okay. Now, you also stated that you received a number of phone calls regarding this debt as well from National Action or their agents or one of their representatives. Is that correct?
A: Could have.
Q: Okay. Did you ever answer the phone for any phone calls from National Action regarding this debt?
A: I answered quite a few calls.
*Q: How often would you say that these calls came that you answered?*
*A: From your client?*
*Q: Yes.*
*A: I couldn't remember.*
Q: Are we talking once a week, once every two weeks, twice a week --
A: I get phone calls on average – when I'm there, I can say – let's see, three, four, five a day.
Q: That's total phone calls from anyone?

A: Yes, 800 numbers.
*Q: But you're not – but those aren't all from National Action?*
*A: I'm not sure who they are from.*
Q: Okay.
A: But if I'm there, I will pick up the phone.
*Q: But you'll answer it, but you don't know they are from my client?*
*A: That's correct.*
*Q: Okay. They could be from someone else?*
*A: That is also correct.*
Q: Okay. Do you receive calls from 800-number solicitors of that stuff, of that nature, frequently?
A: Very infrequently.
Q: Okay. Now, during these phone calls would there ever be a situation where the caller wouldn't identify themselves?
A: Just that they want to speak to Karen, she's not here, she's at the doctors, she is at the hospital, are you her husband, yes, I am, you owe this debt, no, I don't owe anything --
Q: Okay.
A: –and we get into a dialogue, I don't know from your client or who it is, they yell, I listen.
Q: Okay.
A: When they get through yelling I tell them to have a good day, God bless them and I hang up.
Q: Would these – do you ever get the names of these people who you spoke with?
A: No.
Q: So do you ever get the identity of them as a representative capacity?
A: Most of them are either Ms. Smith, Mr. Jones or Mr. John's.
Q: Okay. So --
A: Whether those are their true and correct names, I don't know. I'm talking to somebody on the telephone, and they could be from the IRS or the CIA for all I know.
Q: So you're not necessarily certain they are from National Action?
A: I'm not certain of anything over a telephone.
Q: Okay. So – and it's very possible that these phone calls could be from some other company or individual?
A: That is also correct.

* * *

Q: No? Okay. Do they ever repeatedly call you, like call you and call you right back?

A: *There is quite a few of them that will call back-to-back within a 60-second time frame.*
Q: *Okay.*
A: *Who are they from? I don't know.*
Q: *But you don't know if all these calls are coming from our client or possibly someone else?*
A: *That's correct.*
Q: Okay. Now, do you happen to know if our client ever causes your phone to just constantly ring off the hook?
A: No.

(See Dkt. #25, pp. 16-19)(emphasis added).

In short, Arnold Segel has admitted in both his deposition and affidavit that he is unsure whether the alleged phone calls were coming from Defendant, National Action, or from some other unrelated third party. Based upon Arnold Segel's inability to identify with certainty that Defendant actually made the alleged harassing phone calls, and his testimony that he was receiving calls from different 1-800 numbers, the Court concludes that the evidence does not support his claim that the Defendant violated Fla. Stat. §559.72(7) or 15 U.S.C. §1692d(5).

**B. Misrepresentation of the legal status of the debt**

Plaintiffs allege that Defendant violated §559.72(9) of the Florida Consumer Collection Practices Act and §1692e(2)(A) of the Federal Fair Debt Collection Practices Act by telling Arnold Segel that he had a legal obligation to settle Karen Segel's account.

**1. Karen Segel's claims pursuant to §559.72(9) and §1692e(2)(A)**

In Paragraph 13(b) and (c)(iv) of Count III and Paragraph 11 and 13(d) of Count IV of the Complaint, Karen Segel alleges that Defendant violated the FCCPA as follows:

13. The Defendant violated the FCCPA. Its violations include but are not limited to the following:

> * * *
>
> (b) By telling Plaintiff Arnold Segel that he has a legal obligation to settle Plaintiff Karen Segel's account, Defendant National Action Financial Systems (sic), Inc. violated F.S. §559.72(9) that prohibits debt collectors from asserting the existence of legal rights when they know that the right does not exist.
>
> * * *
>
> (c) As expressed in §559.552 of the FCCPA, violations of the Federal Fair Debt Collections Practices Act (hereinafter "FDCPA") constitute violations of the FCCPA. Defendant violated the FDCPA. Defendant's violations include but are not limited to the following:
>
> * * *
>
> (iv) By telling Plaintiff Arnold Segel that he is liable for the balance on Plaintiff Karen Segel's account National Action Financial Services, Inc. violated 15 U.S.C. § 1692e(2) which prohibits the false representation of the character or legal status of a debt.
>
> * * *
>
> 11. In the course of each phone conversation referenced in paragraph 9 the representative of National Action Financial Services, Inc. told Plaintiff Arnold Segel that he had a moral and legal obligation to settle the balance on Karen Segel's account.
>
> * * *
>
> 13. National Financial Group, Inc. violated the FDCPA. Defendant's violations include, but are not limited to the following:
>
> * * *
>
> (d) By telling Plaintiff Arnold Segel that he is liable for the balance on Plaintiff Karen Segel's account National Action Financial Services, Inc. violated 15 U.S.C. §1692e(2) which prohibits the false representation of the character or legal status of a debt.

Upon a review of Karen Segel's allegations in the Complaint, however, it appears that the only allegations pertaining to false representations by Defendant were allegedly made directly to Arnold Segel, not Karen Segel. Although Karen Segel later states in her affidavit and deposition that Defendant had made representations to her regarding her husband's moral and legal obligation to pay her debts, such testimony is outside of the pleadings of the

Complaint. Accordingly, the Court concludes that the pleadings do not support Karen Arnold's claim that the Defendant violated Fla. Stat. §559.72(9) and 15 U.S.C. §1692e(2)(A).

**2. Arnold Segel's claims pursuant to §559.72(9) and §1692e(2)(A)**

Arnold Segel has alleged in the Complaint that Defendant violated: §1692e(2)(A) by falsely representing the legal status of the debt by telling Arnold Segel that he was "morally and legally obligated to pay Karen Segel's debt," and §559.72(9) by asserting the existence of some legal right to enforce the debt against Arnold Segel when Defendant knew that such right did not exist. Arnold Segel's allegations in the Complaint are unsupported by his deposition testimony as follows, in pertinent part:

Q: Can you tell me the nature of this mental anguish that you've sufferred?
A: By getting phone calls regarding my wife telling me that I owe certain obligations that I feel I have no obligation to.
Q: Okay.
A: And I repeat this on a constant basis, yeah, I consider that mental anguish, harassment.
*Q: But, again, you're not sure that these calls have come from our client or all of them?*
*A: That's correct.*
*Q: It's very possible that these calls could have come from other people?*
*A: That is also correct.*

(<u>See</u> Dkt. #25, pp. 25-26)(emphasis added).

* * *

Q: When you had these conversations with these people that were trying to collect the debt who would not identify themselves, did they ever identify the nature of the debt, what debt they were trying to collect or what they wanted you to pay?
A: The ones I talked to, I think they just said it was a credit card debt, or it was an outstanding debt that my wife owed. Who I was actually talking to, I don't remember.

(<u>See</u> Dkt. #25, p. 29, lines 3-11.)

* * *

Q: Actually, let me ask one follow-up to that. Regarding the nature of the debt, did you say that they would never – they didn't provide a complete explanation of the nature, and it would be limited to a credit card or something like that?
A: From what I remember.
Q: Now, do you know – do you know if that debt was related to our client's debt that was owed?
A: Do I remember? No, I do not.

(See Dkt. #25, p. 29, lines 16-24.)

Thus, pursuant to Arnold Segel's deposition testimony, Arnold Segel is unable to state whether representations from debt collectors telling him that he was "morally and legally obligated to pay Karen Segel's debt" were made by Defendant, National Action, or by some other unrelated third party.[3] Accordingly, the Court concludes that the evidence does not support Arnold Segel's claim that the Defendant violated Fla. Stat. §559.72(9) and 15 U.S.C. §1692e(2)(A).

**C. Communications with third parties pursuant to §1692c(b)**

Finally, Plaintiffs argue that Defendant violated §1692c(b) by communicating, in connection with the collection of any debt, with a person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

[3] See Dkt. #25, pp. 16-22, 25-26, and 29.

**1. Karen Segel's claims pursuant to §1692c(b) based on the July 7, 2004 letter**

Karen Segel argues that Defendant violated §1692c(b) by sending a "dunning letter" to the residence of Karen Segel's step-son. The letter dated July 7, 2004 (Dkt. #1-2) was addressed to "Karen K. Segel" but was sent to Karen Segel's step-son's address at 2405 Enlisted Way, Tampa, Florida 33621. The July 7, 2004 letter was the only letter sent to the step-son's address. The letter was addressed to "Karen K. Segel" only. Clearly, it was improper for anyone other then Karen Segel to open the July 7, 2004 letter without her permission. The record is devoid of evidence as to any other indicators on the envelope that would have "communicated" to a third party that such letter was connected with the collection of a debt against Karen Segel. The act of sending one letter addressed to a consumer but sent to the wrong address does not alone appear to indicate a violation by Defendant of §1692c(b). Accordingly, the Court concludes that the evidence does not support Karen Segel's claim that the Defendant violated §1692c in relation to the July 7, 2004 letter.

**2. Arnold Segel's claims pursuant to §1692c(b) based on the July 7, 2004 letter**

Arnold Segel claims that the July 7, 2004 letter addressed to Karen Segel and sent to his son's house was a third party communication by Defendant which violated §1692c(b). The July 7, 2004 letter does not mention Arnold Segel, nor does it concern any debt in connection with him. The July 7, 2004 letter was not addressed to Arnold Segel, nor is

Arnold Segel obligated to pay the debt at issue. Additionally, as discussed above, this Court has already concluded that the July 7, 2004 letter should not have be opened by anyone other than Karen Segel and that the record is devoid of evidence as to any other indicators on the envelope that would have "communicated" to a third party that such letter was connected with the collection of a debt. Accordingly, for all these reasons, Arnold Segel has failed to offer evidence supporting a violation as to him under §1692c in relation to the July 7, 2004 letter.

**3. Plaintiffs claims pursuant to §1692c(b) based on phone calls by Defendant and received by Arnold Segel**

Plaintiffs allege in their complaint that Defendant violated §1692c by engaging Arnold Segel in telephone conversation regarding the balance on Karen Segel's account. Title 15 U.S.C. §1692c(b) states:

> (b) Communications with third parties
>
> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Further, Title 15 U.S.C. §1692c(d) states:

> For the purpose of this section, the term "consumer" includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator.

Accordingly, the evidence proffered by the Plaintiffs does not support their claim that the Defendant violated §1692c in relation to any communications by and between Arnold Segel and Defendant, since under §1692c(d) the term "consumer" includes the consumer's spouse. See also West v. Costen, 558 F. Supp. 564, 576. Pursuant to §1692c(d), improper communications with third parties does not include communications by and between the debt collector and the consumer's spouse.

For these reasons, Plaintiffs' request for partial summary judgment as to the issue of liability against Defendant for a violation of 15 U.S.C. §1692c(b) is denied.

## IV. Defendant's Motion for Summary Judgment

In Defendant's Motion for Summary Judgment, Defendant argues that the pleadings, depositions, answers to interrogatories and admissions on file with this Court demonstrate that there is no genuine issue as to any material fact to be tried on the issue of liability, therefore Defendant is entitled to judgment as a matter of law. This Court agrees in part and disagrees in part.

### A. Harassing Phone Calls

As discussed above, it appears that there are genuine issues of material fact as to whether the alleged phone calls were made by Defendant and with such frequency as to annoy or harass Karen Segel in violation of 15 U.S.C. §1692d and Fla. Stat. §559.72(7). The Court finds that the resolution of Karen Segel's claims will depend on whether the evidence presented at trial establishes that Defendant violated: Fla. Stat. §559.72(7), by willfully communicating with the debtor or any member of her or his family with such frequency as

can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family; or 15 U.S.C. §1692d, by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. Thus, summary judgment in favor of Defendant is denied as to Karen Segel's claims relating to annoying or harassing phone calls pursuant to Fla. Stat. §559.72(7) and 15 U.S.C. §1692d.

As discussed above, the Court concludes that the evidence does not support Arnold Segel's claim that the Defendant violated 15 U.S.C. §1692d or Fla. Stat. §559.72(7). Accordingly, summary judgment is granted in favor of Defendant as to Arnold Segel's claims relating to annoying or harassing phone calls pursuant to Fla. Stat. §559.72(7) and 15 U.S.C. §1692d.

**B. Misrepresentation of the legal status of the debt**

Defendant argues that it is entitled to summary judgment as to allegations by Plaintiffs against Defendant relating to violations of Fla. Stat. §559.72(9) and 15 U.S.C. §1692e(2)(A). Plaintiffs have alleged in their Complaint that Defendant violated §559.72(9) and§1692e(2)(A) by telling Arnold Segel that he had a legal obligation to settle Karen Segel's account. Upon a review of the Complaint, however, it appears that Karen Segel has pled that these alleged false misrepresentations were made only to Arnold Segel. Moreover, in his deposition testimony and affidavit statements Arnold Segel admits that he is not sure who made the alleged false misrepresentations "that he had a legal obligation to settle Karen

Segel's account." Accordingly, the Court concludes that the evidence does not support Plaintiffs' claim that the Defendant violated §559.72(9) and§1692e(2)(A). Thus, summary judgment is granted in favor of Defendant as to Plaintiffs' claims relating to false representations as to the legal status of the debt to Arnold Segel pursuant to Fla. Stat. §559.72(9) and 15 U.S.C. §1692e(2)(A).

**C. Communications with third parties**

Defendant argues that it is entitled to summary judgment in its favor pursuant to 15 U.S.C. §1692k(c), since the alleged "dunning letter" was accidentally sent to Karen Segel's step-son's house, and resulted from a *bona fide* error, notwithstanding the maintenance of procedures by Defendant reasonably adapted to avoid any such error. The Court has considered Defendant's affirmative defense but finds that a question of fact exists for the jury as to whether the alleged harassing phone calls combined with the July 7, 2004 letter constitutes a violation of §559.72(7) or §1692d (prohibiting other types of harassing conduct).[4] As discussed in Part III, Section C of this Order, the Court concludes that the evidence does not support Plaintiffs' claims that the Defendant violated §1692c(b) in relation to communications with third parties . Thus, summary judgment is granted in favor of Defendant as to Plaintiffs' third party communication claims pursuant to §1692c(b).

---

[4] Additionally, there appears to be a factual dispute as to how Defendant obtained Karen Segel's step-son's address, but such factual dispute is not material to the question of whether the delivery of the letter constituted a communication by Defendant to a third party in connection with the collection of a debt owed by Karen Segel.

## V. Conclusion

In summary, Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability (Dkt. # 17) is denied. Defendant's Motion for Summary Judgment is granted in part and denied in part as stated herein. Summary judgment is granted in favor of Defendant as to all claims brought by Arnold Segel in Count I and II of the Complaint. Summary Judgment is granted in favor of Defendant as to all claims brought by Karen Segel relating to false representations of the legal status of the debt alleging violations under Fla. Stat. §559.72(9) and 15 U.S.C. §1692e(2)(A) and third party communications alleging violations under 15 U.S.C. §1692c(b). Summary Judgment is denied as to all claims brought by Karen Segel relating to harassing phone calls or other abusive conduct by Defendant in violation of Fla. Stat. §559.72(7) and 15 U.S.C. §1692d. Plaintiff Karen Segel's claims relating to the Defendant's violation of Fla. Stat. §559.72(7) and 15 U.S.C. §1692d based on harassing phone calls and the July 7, 2004 letter remain for trial.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability (Dkt. # 17) is DENIED.

2. Defendant's Motion for Summary Judgment (Dkt. #31) is GRANTED IN PART AND DENIED IN PART as stated herein.

**DONE** and **ORDERED** in Tampa, Florida on February 22, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2004\04-cv-2388.plaintiff's msj.wpd